# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CHARLES DAVIN WILLIAMS,                    Case No. 1:16-cv-412

        Plaintiff,                             Barrett, J.
                                           Bowman, M.J.
    v.

PARKER-HANNIFIN CORPORATION,

        Defendant.

## REPORT AND RECOMMENDATION

On March 24, 2016, Plaintiff filed a motion seeking leave to proceed *in forma pauperis* to file a *pro se* complaint against a former employer, identified as Parker-Hannifin Corporation. Plaintiff's motion in this case was granted, as were similar motions in two more cases.[1] Defendant Parker-Hannifin has now moved for summary judgment. (Doc. 19). Plaintiff filed a response in opposition to Defendant's motion, to which Defendant filed a reply.[2] (Docs. 20, 22). Pursuant to local practice, this matter has been referred to the undersigned magistrate judge for a report and recommendation on the pending motion for summary judgment. For the reasons set forth herein, Defendant's motion should be **GRANTED** and this case should be dismissed.

## I.    Background

The entirety of Plaintiff's complaint alleges, in conclusory fashion: "I was discriminated against because of my race and age which is a violation of the Age

---

[1]*See* Case No.1:16-cv-888 (complaint against Luxottica dismissed on initial screening as conclusory); Case No. 1:16-cv-889 (virtually identical complaint against Real Soft, Inc.).
[2]Plaintiff subsequently filed a "supplemental response" that Defendant has moved to strike. (Docs. 23, 24). As indicated by separate Order filed this same day, Plaintiff's improper supplemental response has not been considered.

1

Discrimination Employment Act of 1967 and the Civil Rights Act of 1964." (Doc. 3). Despite the lack of factual support in the body of his complaint, this Court permitted Plaintiff's discrimination claims to go forward based upon allegations in an exhibit to Plaintiff's complaint. (Doc. 3-1). In the attached copy of his EEOC charge,[3] Plaintiff alleges that he was discriminated against based on both his race (African-American) and his age (42 years old). More specifically, Plaintiff alleges that on October 1, 2015 he was told that he "must change the way I calculated my mileage, resulting in less compensation," and that following his discharge by HR Manager Tom Reeves, he received a bonus check that was "for significantly less than what my offer letter stated." (*Id.* at 1).

Defendant fired Plaintiff based upon its articulated belief that Plaintiff had made false statements on his employment application regarding his criminal history. In his EEOC charge, Plaintiff asserts that he passed the initial background check, and "told Reeves that the record I was accused of having belonged to a different Charles Williams." (*Id.*) Plaintiff concludes by alleging that "Caucasian employees were not forced to change the way they calculated mileage or subject to additional background checks." (*Id.*)

## II. Summary Judgment Standard

In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the

---

[3]Plaintiff also attached a Notice of his Right to Sue, dated December 17, 2015. (Doc. 3-1 at 5). Defendant does not challenge the timeliness of suit.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c))(internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

Drawing reasonable inferences in favor of the non-moving party does not mean that a Court must ignore contrary evidence, or the lack of evidence. When a moving party shows that the non-moving party lacks evidence on an essential element of his claim, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trail." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party may not rely solely on his subjective beliefs or opinions. *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008). He must do more than show that some hypothetical doubt exists as to the facts. *Matsushita*, 475 U.S. at 586. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

As Defendant is quick to point out, Plaintiff has submitted no evidence to support his claims other than a single exhibit that Defendant challenges as not authenticated. Plaintiff's response in opposition to Defendant's motion consists almost entirely of unsworn, speculative, and conclusory statements. Applying the relevant legal standards, it is clear that Defendant is entitled to judgment as a matter of law.

3

### III.    Findings of Fact

The following facts are uncontested, and are supported by unrebutted evidence produced during discovery and attached by Defendant to its motion.  Pursuant to the requisite standard, all *reasonable* inferences have been drawn in favor of the Plaintiff.

On July 29, 2015, following submission of an employment application and interview by Division Human Resources Manager Tom Reeves, and Division Controller Gordon Johns, Defendant extended an offer of employment to Plaintiff, conditioned on successful completion of "our company's drug screen and background check."  (Doc. 19-3 at 7).  Reeves and Johns are both Caucasian, and were 57 and 53 years of age, respectively, when they extended an offer to Plaintiff.  (Doc. 19-1, Reeves Aff. at ¶5; Doc. 19-3, Johns Aff. at ¶ 5).  The offer of employment clearly stated that Plaintiff's employment would be "'at will' and … subject to all company policies and procedures." (Doc. 19-3 at 7). Plaintiff accepted the Defendant's offer, and an initial background check revealed no criminal convictions.  (Doc. 19-1, Reeves Aff. at ¶ 9, Exh. 1).

The employment application completed by Plaintiff asked:  "Have you ever been convicted of (or pled guilty or no contest to) a violation of law other than a minor traffic violation?  Note: A yes answer will not necessarily disqualify you from employment." (Doc. 18, Williams Deposition at 47:10-24, Exh. 10 at 1).  Williams checked the box answering "no."  Plaintiff also initialed a statement on the application that affirmed:  "I understand any omission or misrepresentation I make may result in refusal or separation from employment." (*Id.*, at 47:25-48:1 and Exh. 10 at 4).

Plaintiff began his employment as Plant Accountant, based out of Defendant's Eaton facility, on August 17, 2015.  Though based out of Eaton, Plaintiff's duties

required him to support and periodically travel to the Brookville and Lewisburg, Ohio facilities. Additionally, Plaintiff was required to occasionally travel to Columbus, Ohio, where his direct supervisor was based.

On his first day of employment, Plaintiff signed the Defendant's "Probationary Employee Policy," which states that employment "is effective only after the probationary employment period of 120 calendar days is satisfactorily completed," and that "an employee may either resign or be discharged during the probationary period with neither the employee nor the company required to give other prior notification nor show detailed cause." (Doc. 19-6 at 2). The same form acknowledged Plaintiff's agreement "to abide by the policies and procedures of Parker Hannifin as stated and published in the Employee Handbook." (*Id.*)

Defendant's written Global Travel Policy on Travel and Related Business Expenses states that employees are paid a federal per diem mileage rate for travel between an employee's home base (here, the Eaton facility) and other facilities. (Doc. 18 at 87:3-89:12; Doc. 19-1 at ¶ 12, Doc. 19-3 at ¶ 11, Doc. 19-4, Policy at 2). When Plaintiff traveled from his residence to a non-Eaton facility, Defendant reimbursed him for the total distance traveled, minus the normal "commuting" distance between Plaintiff's residence and the Eaton facility. (Doc. 19-4, Policy at 5). Plaintiff does not dispute the application of the policy to his travel to/from the Easton, Brookville, or Lewisburg facilities, but does question his reimbursement for travel to Columbus, Ohio.

Cy French was the Plant Manager at Defendant's Eaton, Ohio facility, the primary office where Plaintiff was assigned. French was not Plaintiff's supervisor, but states in an affidavit that he became "concerned that Plaintiff was pressed financially," which was "of particular concern…given Plaintiff was a member of the accounting

department," after Plaintiff "repeatedly questioned his mileage reimbursements and safety awards"[4] (Doc. 19-5, French Aff. at ¶ 6). Approximately 7 weeks after Plaintiff began his employment, French conducted an internet search using Plaintiff's name.

Plaintiff disputes French's stated motivation for the internet search, asserting that he did not complain to French about his mileage and safety awards. French's affidavit is silent as to the source of his knowledge of Plaintiff's complaints. Plaintiff implies that French's knowledge was derived from an alleged romantic relationship between French and an Eaton facility HR representative identified as Melissa Reimers. Plaintiff testified that his request for multiple safety awards was denied by Reimers, who informed Plaintiff that he was eligible for only one safety award from the Eaton facility.

Regardless of French's motivation, the October 8, 2015 search revealed seven separate criminal case numbers in Fairfield Municipal Court records between the years 2004 and 2014 associated with the name: "Charles Davin Williams." The records showed convictions for assault (2004), resisting arrest (2004), and theft by deception (2014). (Doc. 19-5 at ¶ 7). French contacted Reimers to confirm Plaintiff's date of birth, which matched the date listed on the Fairfield Municipal Court criminal case records. (Doc. 19-5 at ¶ 7). French emailed an image of the court records page containing the criminal case numbers, along with a link to the court's website, to Operations Manager Jay Struder. French forwarded the same email to Plaintiff's direct supervisor (Reeves) and to Division Controller Johns in Columbus, Ohio.

Reeves advised that Human Resources would address the issue. On October 12, Reeves met with Johns, Area Human Resources Manager Mary Cunningham, and Parker's legal counsel, to review Plaintiff's employment application. Based upon the

---

[4]A safety award was an incentive given to employees at a facility with an unblemished safety record.

Fairfield court records, they determined that Plaintiff had falsified his employment application. (Doc. 19-1 at ¶ 16; Doc. 19-3 at ¶ 15).

Later that same day, Reeves met with Plaintiff in person, showed him the docket entries at issue, and asked about the convictions. By affidavit, Reeves states that Plaintiff admitted some of the convictions were his but explained that the theft by deception conviction was due to him passing a bad check after his wife failed to tell him that she closed their checking account. (Doc. 19-1 at ¶¶ 17-18). During the meeting, Reeves terminated Plaintiff for falsifying his employment application. Plaintiff's EEOC charge states that he received his final bonus check on October 26, 2015, two months and nine days after his first day of employment.[5]

The following day on October 13, Reeves attests that Plaintiff recanted his prior admission,[6] claiming that the convictions belonged to a different Charles Williams. (Doc. 19-1 at ¶ 19). Reeves asked Williams to submit documentation to support that contention. In response, Plaintiff faxed a report that showed January 2009 traffic violations, but that was limited to the January 2009 time frame. (Doc. 19-1 at ¶20 and Doc. 18, at Exh. 4). Because the faxed report did not include the time frame of the criminal convictions, Reeves did not believe that it refuted evidence that Plaintiff had falsified his employment application. He asked Plaintiff to provide additional information in the form of a letter from the Clerk of Court explaining why the convictions were erroneously associated with his full name and date of birth. Plaintiff provided no additional information. (Doc. 19-1 at ¶ 20).

_____

[5]Plaintiff does not dispute his dates of employment from August 17-October 12, a period of less than two months, but inexplicably insists that he worked for Defendant for "three months" (Doc. 20 at 2).
[6]Without reference to supporting evidence, Plaintiff continues to deny having made any admissions to Reeves.

In his memorandum in opposition, Plaintiff disputes that the faxed record retained by Reeves was from an irrelevant time period. Plaintiff points to a different exhibit attached to his memorandum that purports to prove that he has only traffic convictions and "no" criminal record through October 13, 2015. (Doc. 20 at 7). Importantly, Plaintiff's exhibit is not authenticated. Plaintiff's exhibit bears no resemblance to the exhibit that Reeves attests was faxed to him. For the reasons discussed below, the undersigned agrees that Plaintiff's exhibit should not be considered.

During the course of this litigation, Defendant obtained additional information that Plaintiff had misrepresented his employment history. Plaintiff's application states that he worked for National Dairy for over seven years, from January 2007 until the date of his application (July 2015). However, his background report reflects employment with National Dairy for only two years, from December 4, 2008 until December 31, 2010. (Doc. 19-1 at ¶ 18). Although the referenced after-acquired evidence is undisputed, Defendant does not rely upon it for purposes of the pending motion for summary judgment.

## IV.    Analysis and Conclusions of Law

In order to prove his employment discrimination claims, Plaintiff must either identify direct evidence of discrimination, or he must prove an indirect case of discrimination using the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). Here, Plaintiff does not allege <u>any</u> direct evidence, but instead relies upon the traditional burden-shifting analysis.

Defendant argues, and the undersigned agrees, that Plaintiff's age and race discrimination claims fail as a matter of law because Plaintiff has failed to establish his

discrimination claims through indirect evidence.  In order to prove either a claim of race discrimination or of age discrimination through indirect evidence, Plaintiff must prove: (1) he is a member of a protected class; (2) he suffered an adverse employment action, meaning a material change in a term or condition of employment; (3) he was qualified for his job; and (4) Defendant replaced him with someone outside the protected class or treated him differently than similarly-situated individuals. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).  Additionally, under the ADEA, Plaintiff must show that his age was the "but for" cause of his termination.

### A.  Failure to Show Replacement or Different Treatment

Plaintiff has to show either that Defendant replaced him, or that Defendant treated him differently than similarly situated individuals.

### 1.  Plaintiff Not Replaced

After Plaintiff's termination, Defendant left the Plant Accountant position open and unfilled for more than a year, during which time Plaintiff's former duties were assumed by others in the accounting department.   As a matter of law, a "plaintiff is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work."  *See Vandine v. Triniity Health Sys.*, 2015 WL 5216715, at *5 (S.D. Ohio Sept. 8, 2015) (citing *Grossjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003).   Plaintiff concedes he was not replaced.  However it is worth noting that more than a year later, Lisa Ralston, the individual who held the position immediately before Plaintiff, transferred back to Eaton and resumed her former duties.  Ms. Ralston is more than a decade older than Plaintiff.  (Doc.1 at ¶11).

Plaintiff argues that the failure to replace him should not doom his age discrimination claims. In a bizarre argument, he maintains that Defendant has chosen to leave the position unfilled for the express purposes of defeating Plaintiff's age discrimination claim in this lawsuit. He speculates that Defendant will replace him with a younger individual at some undetermined future time. Plaintiff's subjective belief is not only implausible on its face, but is legally insufficient to prove he was "replaced." Because Plaintiff relies exclusively on a future "replacement" (by someone other than Ms. Ralston) to support his ADEA claim, the Defendant is entitled to summary judgment.

### 2. No Evidence That Defendant Treated Similarly Situated Individuals Differently

Plaintiff relies on allegations that he was treated differently than similarly situated Caucasian employees to support his race discrimination claim. To be similarly situated, individuals must be comparable in "all relevant respects*." Fueling v. New Vision Med. Laboratories LLC*, 284 Fed. Appx. 247, 255-256 (6th Cir. 2008). "[T]he plaintiff must produce evidence that the relevant other employees are 'similarly situated in all respects.'" *Hollins v. Atlantic Co.*, Inc., 188 F.3d 652, 659 (6th Cir. 1999)(quoting *Mitchell*, 964 F.2d at 583). In the disciplinary context, to be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it*." Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

In this Court, Plaintiff alleges five instances of different treatment, although only the first three were included in his EEOC charge: (1) Defendant subjected him to an additional "background" check (leading to the discovery of his allegedly fraudulent statements); (2) Defendant subjected him to a different mileage policy, resulting in lower reimbursements; (3) Defendant paid him less bonus than he was entitled to; (4) Defendant subjected him to a different "safety award" policy; and (5) Defendant failed to recognize his birthday.

The allegations are addressed in slightly different order for the convenience of the Court. Defendant is entitled to summary judgment because Plaintiff has failed to come forward with evidence to support his allegations, or any other evidence of discriminatory treatment..

### a. Mileage Reimbursement Policy

Plaintiff claims that he was subjected to stricter interpretations of both mileage and safety award policies, which allegedly had the effect of reducing his compensation.[7] Turning first to the mileage policy, Plaintiff's dispute is extremely narrow. He testified that he does not dispute the manner in which his reimbursement was calculated to and from the Eaton, Brookville, or Lewisburg facilities, whether he was traveling from his home to and from those facilities, or from one facility to another, or any variation thereof. (Doc. 18 at 87:3 – 89:12). Instead, Plaintiff disputes *only* his reimbursement for travel to Columbus, Ohio. (Doc. 18 at 89:16-25).

Plaintiff argues he should have been compensated for the entire distance from his residence to Columbus. (Doc. 18 at 90:4 – 91:11). He alleges in his EEOC charge

---

[7]Plaintiff did not offer any testimony or evidence concerning either the amount of reimbursement he believes he was shorted, or the value of a "safety award."

that on October 1, 2015, Johns told him that he would be compensated only for the distance between Eaton (his home base) and Columbus, and that he would need to alter the way he had been submitting his Columbus travel requests. Plaintiff contends (without evidence) that he alone was required to change his reimbursement requests. (Doc. 20 at 5). Plaintiff testified to his belief that the Caucasian employee who held the Plant Account position prior to him, as well as other unidentified employees, were not required to calculate mileage in the same manner, but were permitted to obtain reimbursement for their mileage from their homes rather than from their assigned duty stations to Columbus. (Doc. 18 at 91:12-16).

Plaintiff's subjective belief is disproven by the record, and is insufficient to overcome Defendant's well-supported motion that the policy was not discriminatorily applied. Defendant's written Global Travel Policy on Travel and Related Business Expenses is entirely consistent with the mileage policy explained to and applied to Plaintiff. (Doc. 19-4 at 5). In addition, both John and Reeves attest that no different mileage reimbursement policy was applied to Plaintiff's predecessor, Ms. Ralston, during her tenure in the same position. (*See* Doc. 19-3 at ¶ 18l Doc. 19-1 at ¶ 14).

### b. Safety Award Policy

Plaintiff similarly contends that the Defendant's safety award policy was discriminatorily applied. Plaintiff testified to his belief that employees with responsibilities at more than one facility should be eligible for safety awards at each facility. (Doc. 18 at 97:10 - 98:9). He asserts that after "Melissa from Human Resources" informed him that he could not receive multiple awards despite working at multiple locations, Melissa "escalated the situation to a conference call with my boss Mr. Johns and the Human Resources manager." (Doc. 20 at 6). Plaintiff argues that he "just backed down from

even requesting the rewards because Melissa was so angry and was determined to not let me have safety awards…." (*Id.*).

Plaintiff has failed to come forward with evidence that any similarly situated Caucasian employees actually received multiple safety awards. Plaintiff testified to his belief that "Jay," the "operations dude," received multiple safety awards. (Doc 18 at 99:1-7). However, Operations Manager Jay Struder is not similarly situated since he did not have the same job title or responsibilities, and did not report to the same supervisor.

Plaintiff also identifies Lisa Ralston as someone who received multiple awards. Although Plaintiff's predecessor is similarly situated, Plaintiff's unsupported assertions cannot overcome the contrary probative evidence introduced by Defendant that neither Ralston nor any other employee received multiple safety awards or greater mileage reimbursements. (*See* Doc. 19-3 at ¶ 18; Doc. 19-1 at ¶ 14).

### c. Birthday Celebrations

Though not alleged in his EEOC charge, Plaintiff complains here that the Defendant "never made mention of my birthday or invited me to the birthday celebration for employees in October and didn't have my name on the list of birthdays for the month, but they recognized all the white employees birthdays and celebrated and gave them gifts." (Doc. 20 at 5). Plaintiff points to no record evidence to support these allegations, and fails to identify any particular employee whose birthday the Defendant celebrated, what "gifts" they received, or who paid for the unknown gifts. Plaintiff does not even identify the date of the "birthday celebration for employees in October" or at what facility it took place.

Plaintiff was a relatively new employee who was terminated on October 12, during his probationary period. He traveled to multiple facilities. Even assuming that

the October celebration occurred at a facility Plaintiff was assigned to prior to his termination, it would be unreasonable to draw an inference of racial discrimination based upon the Defendant's failure to recognize Plaintiff's birthday on the basis of such vague and unsupported allegations.  Moreover, the failure to recognize a birthday does not constitute an actionable adverse employment action, because it does not amount to a materially adverse change in the terms or conditions of employment.

### d.  Basis for Termination

The primary basis for Plaintiff's EEOC charge and for this federal complaint is Plaintiff's termination.  Plaintiff insists that he was terminated only after – motivated by Plaintiff's race – the Defendant subjected him to an additional "background check."

The record is undisputed that Johns and Reeves hired and supervised Plaintiff, and that the same individuals, together with the Area HR Manager and legal counsel, decided to terminate Plaintiff.  None of these decision-makers conducted any additional "background check" until Cy French, the Eaton Plant Manager who was not Plaintiff's supervisor and had no decision-making role in Plaintiff's hiring or termination, alerted HR to his discovery of records that facially appeared to reflect Plaintiff's multiple criminal convictions.

Defendant has offered evidence that French was motivated to conduct his internet search not from racial bias, but out of concern that Plaintiff was hiding financial difficulties in light of Plaintiff's repeated questions about mileage reimbursements and safety awards.  Plaintiff does not dispute that he questioned both his mileage reimbursement and eligibility for safety awards.

Plaintiff offers no evidence of racial bias by French or anyone else, but instead relies upon convoluted and speculative theories of racial bias by French and/or

Reimers, with whom Plaintiff alleges French was romantically involved.[8] Plaintiff assumes that French "discriminated against stereotyping against me thinking all black me[n] want to have sex with white women." (Doc. 20 at 3). Plaintiff wildly speculates that Reimers, a local HR representative at the Eaton facility, "didn't like the black man Charles questioning her about discrimination and not giving me the safety awards….," (Doc. 20 at 3), and that she and French "plotted a retaliation plan" to "punish and terminate me." (*Id.*) Plaintiff questions how French knew of his complaints or his middle name, and illogically concludes that French must be lying about his true (discriminatory) motivation to conduct an internet search.

Plaintiff does not offer the slightest evidence of bias by French or Reimers other than the self-serving conclusions in his memorandum. Moreover, he does not explain how the alleged racially motivated bias by French and/or Reimers can be imputed to the decision-makers in this case.[9] Where there is no evidence that a plaintiff has made decision-makers or supervisors aware of alleged discrimination, and the articulated basis for the adverse employment action is non-discriminatory on its face, the employer may be relieved from liability. *See generally Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d 321, 332 (6th Cir. 2008)(employer not liable for co-worker harassment absent evidence that it knew or should have known of the harassment and failed to implement prompt and appropriate corrective action). Plaintiff's reliance on nothing more than speculation and conjecture to support his assertions of race discrimination is not sufficient to proceed to trial. *See Snyder v. Pierre's French Ice Cream Co.*, 589 Fed.

---

[8]Plaintiff uses courser language that this Court finds no reason to repeat.

[9]In his memorandum in opposition, Plaintiff alleges that he verbally complained to Reimers and unspecified others about "discrimination." (Doc. 20 at 3). Plaintiff's unsworn argument is not evidence. Defendant has a detailed EEOC policy. (*See* Doc. 19-7). Defendant's evidence reflects no verbal or written complaints by Plaintiff of race or age discrimination during his tenure of employment.

Appx. 767, 771 (6th Cir. 2014) (personal belief, conjecture and speculation are insufficient to support inference of discrimination); *Mitchell v. Toledo Hosp.*, 964 F.2d at 585  (mere speculation ungrounded in fact is insufficient to defeat summary judgment).

### e.  Plaintiff's Bonus

In his EEOC charge, Plaintiff alleges that he received a final bonus check on October 26 that was "for significantly less than what my offer letter stated." Neither Defendant nor Plaintiff spend much time discussing this allegation.  This Court also finds no cause for significant discussion.  Consistent with Plaintiff's other allegations, Plaintiff has failed to come forward with any evidence to suggest that his bonus was improperly calculated at all, much less that the calculation was discriminatory.  In his deposition, Plaintiff testified that he did not recall how much his bonus should have been "exactly" but thought that it "should have got me to about ninety thousand" on an annual basis. (Doc. 18-1 at 20:19-25 – 21:1-12).

Defendant has placed a copy of Plaintiff's offer letter in the record.  The letter reflects a monthly rate of pay of $6,500.00 per month, as well as a

> *projected* payout for RY15 [of] 7.5% which in this case would equate to 15.0% bonus paid quarterly (33% held for 4th Qtr. Payout).  *[T]his not a guarantee* and is based entirely on our profitability.

(Doc. 19-3 at 7).  On its face, the offer letter does not guarantee any particular bonus, but does state an offer of a monthly base salary with projected, but not guaranteed, quarterly bonus payments.  Plaintiff's two-month probationary period of employment lasted less than one quarter.

Plaintiff does not identify any similarly situated Caucasian employees, or other evidence that would suggest racial bias in the calculation of his bonus.  He does not identify either precisely what bonus was paid or the amount he claims he should have

received.  The complete failure of any probative evidence on the issue entitles the Defendant to summary judgment.

In his memorandum in opposition, Plaintiff seems to newly assert that he was paid no bonus at all.  "I wasn't paid my bonus and all other white employees were paid their bonus."  (Doc. 20 at 3).  Considering this allegation is contrary to both his complaint and his deposition testimony, and wholly unsupported by any evidence, it cannot save him from summary judgment.

### B.   Legitimate Non-Discriminatory Basis for Discharge

It is only when a plaintiff has established a prima facie case that the burden of production shifts to the employer to put forth a "legitimate, nondiscriminatory reason" for the adverse action taken.  *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006) (citing *Burdine*, 450 U.S.at 253).  If the employer meets that burden, then "the presumption of discrimination created by the prima facie case falls away…and the plaintiff then needs to show that the defendant's 'legitimate nondiscriminatory reason' was a 'pretext for discrimination.'"  *Id.*, at 706-707 (internal citations omitted); *see also Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).  Here, even if a reviewing court were to conclude that Plaintiff has met his prima facie burden to show indirect evidence of discrimination, the Defendant remains entitled to summary judgment based upon its articulation of a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff's failure to show that reason was pretextual. *See Smith v. Allstate Ins. Co.*, 195 Fed. Appx. 389, 393 (6th Cir. 2006).

As long as the employer "reasonably relied on the particularized facts then before it, [the Court does] not require that the decisional process used by the employer be optimal or that it left no stone unturned.  Rather, the key inquiry is whether the employer

made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). There is no dispute that Defendant had serious reservations about Plaintiff falsifying his employment application. Those reservations arose well within Plaintiff's 120 day probationary period, and Plaintiff was an "at will" employee who had already been cautioned about his erroneous interpretations of the Defendant's mileage and safety award policies. Plaintiff seems to believe that once an employee has passed an <u>initial</u> background check, an employer may not revisit the employee's statements on his application, even when later presented with strong evidence that a probationary employee falsified his application. Plaintiff's premise in this regard is illogical and wrong.

In his affidavit, Reeves explains Defendant's dissatisfaction with Plaintiff's explanations of the court records, and with the alleged "proof" of his lack of criminal convictions that he faxed the day after he was terminated. There is no dispute that Plaintiff did not provide Defendant with the additional evidence requested: a letter from the Clerk of Court that would clarify that the reported criminal history of someone with the same full name and date of birth did not belong to Plaintiff. In short, Defendant's articulated reasons for terminating Plaintiff were eminently reasonable.

To prove that the Defendant's articulated reason was not reasonable but instead pretextual, Plaintiff must prove that the stated reason (1) has no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action. *Smith v. Allstate Ins. Co.*, 195 Fed. Appx. 389, 395 (6th Cir. 2006). Plaintiff appears to dispute the factual basis for the Defendant's articulated reason. However, Plaintiff offers no proof to support his argument.

Even if the exhibit attached to Plaintiff's memorandum in opposition were considered, the Defendant would remain entitled to summary judgment based upon its honest belief that Plaintiff had falsified his application. "The ultimate burden of proving the defendant's intent to discriminate remains with the plaintiff at all times." *Wright*, 455 F.3d at 707 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

Plaintiff's own inconsistent statements as to whether he does or does not have a criminal record are telling. In his memorandum in opposition, Plaintiff makes the self-serving assertion that he "did not lie on my application I answered all questions *to the best of my understanding* and honestly." (Doc. 20 at 3, emphasis added). Plaintiff's memorandum carefully suggests that Plaintiff did not *intentionally* falsify his employment application. For example, he contends that "the only criminal question that I remember answering 'no' to was the one where they asked me 'Have you ever been convicted of a felony and I do remember answering 'no' to that question." (Doc. 20 at 4). In other portions of his memorandum, Plaintiff denies having any "criminal history," because the referenced records "only show charges not convictions." (Doc. 20 at 4). Yet he also states that there "are cases that were dismissed and I was found not guilty in that county." (*Id.*) Despite arguing that he did not intend to lie (because he only recalls a question about felonies), and/or that he has "charges not convictions," and/or that he "was found not guilty" on some charges, Plaintiff alternatively argues that the charges are "from [the] other Charles Williams." (*Id.*) And, despite his contention to this Court that he only recalls an inquiry about felonies, Plaintiff denies offering the same explanation to Reeves. "I never told Reeves 'I completed the employment application the way I did because the convictions were not felonies' I told Reeves I didn't have any convictions and I didn't know what he was talking about…." (Doc. 20 at 7). Improbably,

Plaintiff additionally claims (for the first time, without evidence, and contrary to his deposition testimony) that the "application that Parker is presenting as evidence is not the same application I filled out." (Doc. 20 at 4).

Unlike the non-evidentiary arguments in his memorandum in opposition, Plaintiff's deposition testimony constitutes evidence. However, Plaintiff's own testimony fails to prove that Defendant's articulated reason for the termination had no basis in fact:

Q [Defense Counsel]. Okay. Your charge also says in paragraph two, I was told I was discharged for having a criminal record, which I deny. Are you saying here that you never had a criminal conviction?

A [Plaintiff]. What was the question?

Q. Yeah, and I'm not trying to trick you. In the second paragraph there, the first sentence, you can read it yourself. Roman numeral two, I was told I was discharged for having a criminal record, comma, which I deny. What did you mean by that?

A. I was saying that -- in the second sentence where it says I passed background check.

Q. Well, I'll get to the second sentence. I want to talk about the first sentence first.

A. Well, it's related to the first sentence.

Q. It's a simple question. You say here I was discharged for having a criminal record, which I deny.

A. Uh-huh.

Q. Were you telling the EEOC you didn't have a criminal record?

A. I'm telling them that I passed their background check. And their policy – as far as having a criminal record, I passed their policy.

Q. It's a relatively simple question. As you sit here today, have you ever been convicted of a crime?

A. What do you constitute a crime?

Q. Been arrested, convicted, found guilty, anything like that.

A. So what's the question?

Q. Have you ever been convicted of a crime?

A. *Not that I recall.*

(Doc. 18 at 21-23, emphasis added).

Plaintiff's conclusory arguments are insufficient to overcome the strong evidence that Defendant genuinely and reasonably believed that Plaintiff had falsified his employment application. *Accord, Hatcher v. General Electric*, 208 F.3d 213 (6th Cir. 2000)(Table, text available at 2000 WL 245515). The only evidence that Plaintiff provides to support his theory of pretext is the exhibit attached to his memorandum in opposition. That exhibit, which is appropriately challenged by Defendant as not authenticated, purports be a page dated 10/13/15 from the Fairfield Municipal Court showing "no" criminal history for a "Charles Williams" (sans middle name, but corresponding with Plaintiff's birthdate and address). As stated, the exhibit differs significantly from the evidence that Defendant produced in this case of the record that Plaintiff faxed to Defendant on October 13, 2015, which was limited in time to January 2009 and reflected only traffic offenses.

Plaintiff's exhibit also differs significantly from – and fails to explain - the electronic records of the Fairfield Municipal Court, which confirm criminal history, including criminal convictions for offenses other than traffic offenses, for an individual who shares Plaintiff's full name of "Charles Davin Williams" and birth date. *See, generally*, http://www.fairfield-city.org/CourtRecords/municipal-court-records.cfm (accessed on March 29, 2017, results including e.g., Case No 2014-CR B 00274 (guilty of theft by deception)). "Federal courts may take judicial notice of proceedings in other

courts of record." *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6thh Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)).

Even without such judicial notice, however, Defendant is entitled to summary judgment based upon its honest belief that Plaintiff lied about his criminal history. It is not the role of this Court to second-guess the Defendant's legitimate exercise of its business judgment, where there is no evidence whatsoever that the Defendant's decision was colored by illegal discriminatory animus. The Sixth Circuit uses a modified "business judgment" or "honest belief" rule, whereby a court will permit an employer to "establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Blizzard v. Marion Technical College*, 698 F.3d 275, 286 (6th Cir. 2012)(quoting *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010)(additional internal quotation marks and citation omitted).

"To overcome the honest belief rule, the employee 'must allege more than a dispute over the facts upon which [the] discharge was based." *Id.* Instead, he must "put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action.'" *Blizzard,* 698 F.3d at 286 (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001)). Plaintiff's disagreement with Defendant's business judgment "does not create sufficient evidence of pretext in the face of the substantial evidence that [the employer] had a reasonable basis to be dissatisfied." *Id.* (quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir. 2001)). As the Sixth Circuit has explained:

> [T]he key inquiry is whether the employer made a reasonably informed and considered decision before taking adverse employment action… the falsity of (a) (d)efendant's reason for terminating (a) plaintiff cannot

establish pretext as a matter of law under the honest belief rule…. As long as the employer held an honest belief in its proffered reason, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial or baseless.

*Seeger v. Cincinnati Bell Tel. Co.,* LLC 681 F.3d 274, 285 (6th Cir. 2012)(internal citations and quotation marks omitted).

In short, the Court finds Plaintiff's newfound, inconsistent, and unsupported explanations to be insufficient to show pretext or otherwise to defeat Defendant's well-supported "honest belief" in its articulated reasons for Plaintiff's termination.

## C. Same Actor Inference

Defendant herein is also entitled to the benefit of the "same actor" inference. Reeves and Johns interviewed and hired Plaintiff, and participated in the decision to terminate him less than two months later. It makes little sense for an employer to hire an employee, invest time and training, and fire the same employee for discriminatory reasons a short time later. In such circumstances, the "same-actor inference" provides "strong evidence that there was no discrimination involved in the later termination." S*ee Wofford v. Middletown Tube Works, Inc.*, 67 Fed. Appx. 312, 318 (6th Cir. 2003)(citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 572 (6th Cir. 2003)(*en banc*)).

In his memorandum in opposition, Plaintiff argues:

[T]hey only hired me because they saw I was a black person and they never hired a black person so they saw an opportunity to hire a black person and fired him before four months of [probationary] employment and then be able to point to the hiring as vindication that they aren't racist….That is the same as saying that a slave master is not a racist because he had sex with a slave therefore he couldn't possibly be a racist. Or because the slave master hired his slave and treated them well he couldn't be a racist.

(Doc. 20 at 4). There is no evidence or case law that would support Plaintiff's incendiary claims. Plaintiff's subjective belief that the Defendant terminated him based upon racism remains entirely subjective, conclusory, and contrary to law. *See Mitchell v. Toledo Hosp.*, 964 F.2d at 584-85 (plaintiff's subjective belief insufficient to maintain claim of race discrimination); *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)(holding that a nonmoving party has an affirmative duty to direct the court's attention to specific portions of the record upon which the nonmovant seeks to rely to create a genuine issue of material fact); a*ccord Burnett v. Carrington Health Systems*, Case No. 1:11-cv-324, R&R filed 11/30/2012, adopted at 2013 WL 1150208 (S.D. Ohio, March 19, 2013) (granting defendant's motion for summary judgment and dismissing case).

### D. New "Retaliation" Claim

It is unclear whether Plaintiff is attempting to present a new claim that he was terminated based on age or race discrimination *after* he complained about racial animus in the application of the mileage and/or safety award policies. Plaintiff has failed to come forward with any proof that he made any such complaints. However, even if Plaintiff had proffered more than conclusory allegations, a retaliation claim was not included in his EEOC charge and such a claim has not been administratively exhausted.

### III. Conclusion and Recommendation

For the stated reasons, the undersigned hereby **RECOMMENDS** that the Defendant's Motion for Summary Judgment (Doc. 19) be **GRANTED.** Plaintiff's complaint should be dismissed with prejudice, and this case be **CLOSED**.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHARLES DAVIN WILLIAMS,                      Case No. 1:16-cv-412

      Plaintiff,                          Barrett, J.
                                             Bowman, M.J.
  v.


PARKER-HANNIFIN CORPORATION,

    Defendant

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).